# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☒ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

## OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy;
27 U.S.C. § 205(c) - Commercial Bribery

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: 5 Years Imprisonment;
3 Years Supervised Release;
$250,000 Fine; and
$100 Special Assessment

## DEFENDANT - U.S

MATTHEW ADLER

DISTRICT COURT NUMBER

4:25-cr-00051-YGR

FILED
Feb 25 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form MARTHA BOERSCH, Acting

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned) Colin Sampson

## DEFENDANT

### IS *NOT* IN CUSTODY

1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

### IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed

**DATE OF ARREST** Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT

Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

** Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

Date/Time: Before Judge:

Comments:

MARTHA BOERSCH (CABN 126569)
Attorney for the United States
Acting Under Authority Conferred by 18 U.S.C. § 515

FILED

Feb 25 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>MATTHEW ADLER,<br><br>Defendant. | Case No. 4:25-cr-00051-YGR<br><br>VIOLATIONS: 18 U.S.C. § 371 – Conspiracy to Defraud the United States; and 27 U.S.C. § 205(c) – Commercial Bribery<br><br>OAKLAND VENUE |

## INFORMATION

The Attorney for the United States charges:

At all times relevant to this information, unless otherwise indicated, and with all dates being approximate and all date ranges both approximate and inclusive:

### Introductory Allegations

1. MATTHEW ADLER ("ADLER") was, at all times relevant to this Information, a resident of Walnut Creek, California, within the Northern District of California.

2. From approximately 2010 until approximately 2021, ADLER worked for a large national wine and spirits portfolio identified herein as SUPPLIER-1. As part of his duties, ADLER was involved in setting sales goals for SUPPLIER-1 ADLER was the Senior Regional Manager for SUPPLIER-1 from approximately 2017 until approximately 2021.

3. ADLER managed pricing and inventory with SUPPLIER-1's distributor, identified herein as DISTRIBUTOR-1. DISTRIBUTOR-1 was a large national alcohol distributor. DISTRIBUTOR-1 has one of their California headquarters in Alameda County, within the Northern District of California.

4. At all times relevant to the Information, SUPPLIER-1 had a distribution contract with DISTRIBUTOR-1 which allocated funds to be used for certain expenditures, such as marketing and educational events for SUPPLIER-1's wine and spirits products. The expenditures called for representatives of both SUPPLIER-1 and DISTRIBUTOR-1 to approve expenditures of these funds.

5. SUPPLIER-1 also had a Northern California marketing budget of approximately $1,000,000 per year.

Distribution of Prepaid Gift Cards

6. ADLER used the funds allocated in the contract between SUPPLIER-1 and DISTRIBUTOR-1 to bribe employees of DISTRIBUTOR-1 to sell more SUPPLIER-1 inventory and to enrich himself. ADLER used the services of at least two approved third-party vendors identified herein as VENDOR-1 and VENDOR-2 to DISTRIBUTOR-1 to facilitate payments to individuals.

7. VENDOR-1 was a company that was an approved vendor to DISTRIBUTOR-1. The principal of VENDOR-1, now deceased, was a retired former employee of DISTRIBUTOR-1. ADLER directed the principal of VENDOR-1 to purchase thousands of dollars in prepaid "gift cards," including American Express cards, with each prepaid gift card valued at up to $1,000. ADLER directed the distribution of those prepaid gift cards to DISTRIBUTOR-1 employees, including Regional Vice Presidents based in the Northern District of California. ADLER kept and used some prepaid gift cards for the benefit of himself.

8. ADLER and employees of DISTRIBUTOR-1 directed VENDOR-1 to issue invoices for services provided by VENDOR-1 that falsely omitted that VENDOR-1 had purchased prepaid gift cards. ADLER and employees of DISTRIBUTOR-1 approved the payment on those expenses from the funds set up under the contract between SUPPLIER-1 and DISTRIBUTOR-1 or directly billed to SUPPLIER-1.

9. An employee of DISTRIBUTOR-1 introduced ADLER to approved vendor of DISTRIBUTOR-1, identified herein as VENDOR-2.

10. ADLER directed VENDOR-2 to purchase prepaid gift cards, including Visa cards and other prepaid gift card, and to provide them to employees of DISTRIBUTOR-1. ADLER directed the principal of VENDOR-2 to generate false invoices that concealed that VENDOR-2 was purchasing and distributing prepaid gift cards to employees of DISTRIBUTOR-1. Typically, the invoices generated by VENDOR-2 listed meetings or events that did not occur. VENDOR-2 charged a 10% fee for invoicing, events, or purchases conducted on behalf of SUPPLIER-1 and/or DISTRIBUTOR-1.

11. ADLER provided false invoices to SUPPLIER-1's accounting department.

12. The prepaid gift cards purchased and distributed at ADLER's direction were not taxed or reported to the IRS as compensation.

Other Bribes

13. ADLER further directed VENDOR-2 to submit fraudulent invoices to SUPPLIER-1 and DISTRIBUTOR-1 and to hold the funds paid under those invoices for the benefit of employees of DISTRIBUTOR-1 and for himself.

14. VENDOR-2 held money (referred to as "banks") earmarked for ADLER, employees of DISTRIBUTOR-1, and others. Some employees of DISTRIBUTOR-1 already had "banks" set up in their names with VENDOR-2 at the time ADLER directed funds to be added for their benefit. VENDOR-2 would then spend the funds at the direction of those individuals for personal vacations, luxury watches, shopping at boutiques, consumer electronics, event tickets, and golf outings. VENDOR-2 had an online portal for individuals to log in and check their balances, which ADLER also used. On request, VENDOR-2 would distribute funds to individuals via prepaid gift cards.

15. Between approximately 2017 and 2021, approximately $360,000 in funds were held by VENDOR-2 for ADLER'S use. ADLER directed VENDOR-2 to move funds into banks for the use of certain DISTRIBUTOR-1 managers, or to send them prepaid gift cards.

16. In April 2016, ADLER directed VENDOR-2 to purchase a Panerai watch from a jeweler in the Northern District of California, which was delivered to a DISTRIBUTOR-1 executive for selling a pre-set amount of SUPPLIER-1's alcohol.

17. ADLER approved expenses by VENDOR-2 for an April 2019 "Pebble Beach Event" to include lodging, golf, spa expenses, and dinners totaling $47,131.49. The funds were not used for that

purpose, but rather were credited to individual "banks" held by VENDOR-2, including over $9,000 each credited to banks for three managers at DISTRIBUTOR-1. Two executives of DISTRIBUTOR-1 received $5,400 and $3,285 into their banks, respectively.

18. ADLER approved a March 25, 2019, invoice to SUPPLIER-1 and to DISTRIBUTOR-1 for an "RVP Program" to totaling $13,200. The funds were not used for any program, but rather were divided equally among four DISTRIBUTOR-1 employees.

19. In November 2019, ADLER directed VENDOR-2 to purchase concert tickets for a DISTRIBUTOR-1 executive worth $2,370.

20. ADLER directed VENDOR-2 to plan luxury trips for himself, four DISTRIBUTOR-1 managers based in Alameda County, California, and guests to a resort and golf club in Orange County, California. One trip in September 2019 included flights, limo transfers, luxury accommodations, spa treatments, golf, $1,000 prepaid gift cards, and a Bentley car rental.

21. In December 2019, ADLER purchased flights for the same four DISTRIBUTOR-1 managers discussed in the preceding paragraph to Arizona to attend spring training baseball games.

22. In June 2020, ADLER directed VENDOR-2 to ship him over $10,000 in prepaid Visa gift cards for an event with DISTRIBUTOR-1 employees to be held at a golf resort in Napa, California.

23. In November 2020, ADLER directed VENDOR-2 to plan an event with the same four DISTRIBUTOR-1 managers discussed in Paragraphs 20 and 21, above, at Pebble Beach, California. The trip cost tens of thousands of dollars and included rooms, golf and caddie fees, spa treatments, and thousands of dollars in room incidentals.

24. ADLER arranged for a custom tailor to measure himself and numerous DISTRIBUTOR-1 managers for custom suits. Payment for the suits was made through invoices of VENDOR-2 that falsely concealed the true nature of the expense.

25. On several occasions when a DISTRIBUTOR-1 employee could not attend a trip arranged by ADLER, the DISTRIBUTOR-1 employee requested funds instead, which ADLER provided by transferring money held by VENDOR-2 to that employee's "bank" or providing the employee with gift cards.

26. ADLER was notified in approximately 2019 that DISTRIBUTOR-1 would no longer process invoices from vendors such as VENDOR-1 or VENDOR-2 related to purchases of prepaid gift cards. However, employees of DISTRIBUTOR-1 requested ADLER to continue providing them with prepaid gift cards and to approve invoices submitted by VENDOR-2 directly to SUPPLIER-1, which ADLER did.

27. ADLER provided hundreds of thousands of dollars in prepaid gift cards, travel funds, and luxury items to managers and executives of DISTRIBUTOR-1 to induce them to increase sales of SUPPLIER-1's alcohol products.

COUNT ONE: (18 U.S.C. § 371 – Conspiracy to Defraud the United States)

28. Paragraphs 1 through 27 above are incorporated and realleged as if fully set forth here.

29. From at least on or about April 24, 2016, and continuing until at least July 26, 2021, in the Northern District of California, the defendant,

MATTHEW ADLER,

and others, did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree with one another and with other persons both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Treasury Department, specifically the Alcohol and Tobacco Tax and Trade Bureau of the United States Department of the Treasury, in the administration of federal alcohol commercial bribery laws, by using third-party vendors to issue false invoices to conceal the procurement and distribution of bribe payments to employees of a trade buyer, DISTRIBUTOR-1, through falsified invoices.

MANNER AND MEANS

The manner and means by which the conspiracy was accomplished included, among other actions, the following:

30. ADLER directed VENDOR-1 to procure and provide him and others with prepaid American Express gift cards and to submit invoices to him and to DISTRIBUTOR-1 that provided a false description for the expense.

31. ADLER directed VENDOR-2 to procure and provide him and others with prepaid Visa gift cards and to submit invoices to him and to DISTRIBUTOR-1 that provided a false description for the expense.

32. ADLER further directed VENDOR-2 to plan lavish business meetings, typically at golf destinations, for himself and DISTRIBUTOR-1 managers and, sometimes, their spouses or other guests. VENDOR-2 booked flights, hotel rooms, golf and spa packages, room gifts, gift cards, and other items or experiences of value for the guests. On occasions where an invited DISTRIBUTOR-1 employee did not attend, ADLER directed VENDOR-2 to send that employee gift cards or hold funds for that employee's future use.

33. ADLER further directed VENDOR-2 to provide invoices to SUPPLIER-1 listing events that did not occur. ADLER then directed VENDOR-2, after deducting VENDOR-2's fee, to divide up the invoiced amount and hold those funds for, among other things, the future personal spending of certain DISTRIBUTOR-1 managers.

34. ADLER further directed VENDOR-2 to purchase valuable jewelry, including a Panerai watch worth approximately $6,000, which he provided to a DISTRIBUTOR-1 manager.

OVERT ACTS

In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California, and elsewhere:

35. On or about April 23, 2016, ADLER ordered a Panerai watch valued at $6,750 from a Walnut Creek, California, jeweler, to be retrieved by a DISTRIBUTOR-1 manager.

36. On or about March 20, 2018, ADLER directed VENDOR-1 to submit Invoice No. 838 to DISTRIBUTOR-1 and SUPPLIER-1 for $2,418.57 for "In Store Demo Services." In reality, VENDOR-1 provided ADLER with American Express gift cards.

37. On or about April 16, 2019, ADLER directed VENDOR-2 to provide an invoice for a "Pebble Beach Event" purportedly with DISTRIBUTOR-1 employees for $47,131.49. ADLER approved the invoice. In reality, ADLER directed VENDOR-2 to allocate the entirety of the invoiced amount, less VENDOR-2's fees, for the personal spending of five managers at DISTRIBUTOR-1 in amounts between $3,825 and $9,998, as well as to himself.

38. On or about May 3, 2019, ADLER and two DISTRIBUTOR-1 managers exchanged emails regarding a retreat to take place in September 2019 in which a DISTRIBUTOR-1 manager told ADLER "my envelope will be a little larger" and "I will take my leftover in a gift card."

39. On or about December 11, 2019, ADLER directed VENDOR-2 to pay for a Rolex watch that ADLER ordered from a Walnut Creek, California, jeweler. ADLER directed VENDOR-2 to pay for the watch with funds it held for ADLER from prior false invoices submitted to ADLER's employer and DISTRIBUTOR-1.

40. On or about June 15, 2020, ADLER directed VENDOR-2 to purchase 21 prepaid Visa cards valued at $500 each for an event to be hosted by SUPPLIER-1 at a golf resort in Napa, California with DISTRIBUTOR-1 employees.

41. Beginning on or about April 14, 2020, ADLER directed VENDOR-2 to invoice SUPPLIER-1 to fund a trip for DISTRIBUTOR-1 employees to a golf resort in Newport Coast, California for four DISTRIBUTOR-1 managers based in Northern California. On or about August 27, 2020, ADLER directed VENDOR-2 to purchase five prepaid Visa cards valued at $500 each to distribute to those employees at the event.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO: (27 U.S.C. § 205(c) – Commercial Bribery)

42. Paragraphs 1 through 41 above are incorporated and realleged as if fully set forth here.

43. On or about April 14, 2020, in the Northern District of California, and elsewhere, the defendant,

MATTHEW ADLER,

a resident of Walnut Creek, California, did willfully and knowingly make and cause an inducement to a trade buyer through bribes affecting interstate commerce, specifically, by arranging on behalf of SUPPLIER-1, a trip that included the distribution of thousands of dollars worth of prepaid gift cards,

//

//

flights, and luxury accommodations for employees of DISTRIBUTOR-1, procured through VENDOR-2, thereby placing DISTRIBUTOR-1's independence at risk and causing the exclusion of SUPPLIER-1's competitors' products.

All in violation of Title 27, United States Code, Section 205(c).

MARTHA BOERSCH
Attorney for the United States
Criminal Chief

Dated: February 25, 2025.

*/s/ Colin Sampson*
ALEXANDRA SHEPARD
COLIN C. SAMPSON
Assistant United States Attorneys